IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONIQUE T. LIGGETT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security Administration | : | NO. 08-1913 |

**REPORT AND RECOMMENDATION**

THOMAS J. RUETER
Chief United States Magistrate Judge

December 23, 2008

Plaintiff, Monique T. Liggett, filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act").

Plaintiff filed a Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."). Defendant filed a Brief in Opposition to Plaintiff's Motion and in Support of Defendant's Motion for Summary Judgment ("Def.'s Br."), and plaintiff filed a Reply Brief ("Pl.'s Rep."). For the reasons set forth below, this court recommends that plaintiff's Request for Review be Denied, and the Commissioner's Motion for Summary Judgment be Granted.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed an application for SSI on June 17, 2004, alleging disability since April 1, 2004. (R. 82-85.) This claim was denied initially. (R. 62-66.) A request for a hearing was timely filed, and a hearing was held before Administrative Law Judge ("ALJ") William J.

Reddy on May 26, 2005.[1] (R. 361-91.) In a decision dated July 28, 2005, the ALJ found that plaintiff was not disabled under the Act. (R. 47-59.) The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since April 1, 2004.
>
> 2. The medical evidence establishes that the claimant suffers from a bipolar disorder, a social anxiety disorder, a depressive disorder, a personality disorder, low back pain, and asthma, impairments which are severe but which do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (20 CFR 416.921).
>
> 3. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 4. The claimant retains the capacity to perform light work diminished by significant additional limitations as she is restricted to work that involves simple routine tasks with not more than occasional contact with fellow employees and no contact with the general public.
>
> 5. The claimant's impairments prevent her from performing her past relevant work as a sales clerk and an administrative aid [sic].
>
> 6. The claimant is a 'younger individual' with past relevant work as a sales clerk and an administrative aid [sic] and has a "limited education." (20 CFR 416.963, 416.964, and 416.965).
>
> 7. Although the claimant's exertional limitations do not allow her to perform the full range of light or sedentary level work, using Medical-Vocational Rule 202.18 as a framework for decision-making, there are a significant number or jobs in the national economy that she could perform. Examples of such jobs include work as enumerated in the body of this decision at step five (20 C.F.R. 416.966 and Social Security Ruling 96-9p). These are representative of a significant number of jobs existing in the regional or national economy that the claimant can perform. A finding of "not disabled" may be reached within the framework of the above-mentioned rules.
>
> 8. The claimant was not under a "disability" as defined in the Social Security

[1] Plaintiff and Vocational Expert ("VE") Steve Gummerman testified at the hearing. (R. 361-91.)

Act.  (20 CFR 416.9209(f)).

(R. 58.)

Plaintiff's request for review of the decision of the ALJ was granted by the Appeals Council on June 2, 2006.  (R. 74.)  The Appeals Council issued a remand order and instructed the ALJ to do the following:

- Further evaluate the claimant's subjective non-exertional mental complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 416.929) and pertinent circuit case law and Social Security Ruling 96-7p.

- Give further consideration to the claimant's maximum non-exertional mental residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 416.945 and Social Security Ruling 96-8p).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14).  The hypothetical question should reflect the specific capacity/limitations established by the record as a whole.  The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 416.966).  Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

- Update the medical evidence of record, particularly in regard to the claimant's mental health treatment.

(R. 75-76.)[2]  The Appeals Council set forth its rationale for remand by illustrating that in his first decision, the ALJ "found that the claimant's mental impairments 'are more limiting than was

---

[2] To comply with the directive of the Appeals Council, the ALJ did evaluate updated mental health records from The Consortium and the Wedge in his second decision.  (R. 27-29.)  He also discussed plaintiff's subjective complaints in this decision.  (R. 29-31.)

concluded by the state examiners.'" (R. 75.) The Appeals Council further related:

> At the hearing, the claimant's representative read to the vocational expert the moderate limitations noted on the mental residual functional capacity assessment completed by the state examiner (Exhibit 6F). In response to the representative's questioning, the vocational expert testified that there would be no work that could be performed by an individual with the moderate mental limitations shown in Exhibit 6F. The Administrative Law Judge then rephrased the hypothetical still considering Exhibit 6F, and again the vocational expert testified that there would be no work such an individual could perform.

The Appeals Council further stated:

> The decision indicates that the vocational expert opinion was well supported and that "considerable weight" was being afforded the opinion (decision, page 9). It is not clear if the claimant's mental limitations were found "more limiting" than found by the state examiner and the vocational expert testified that an individual could perform no work with the mental limitations found by the state examiner (Exhibit 6F) and the vocational expert was well supported, why then, the vocational testimony was not accepted and the claimant was found able to perform the mental limitations to work.

Id.

Pursuant to the remand order, the ALJ conducted another hearing on May 10, 2007. (R. 392-98.) Plaintiff testified at the hearing. Although VE Agnes Gallen was present at the hearing, she did not testify. Id. On June 28, 2007, the ALJ issued another decision wherein he denied plaintiff's disability claim finding that plaintiff could perform a limited range of unskilled, light work. (R. 12-32.) In his second decision, the ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since May 4, 2004, the protective filing date of her application (20 CFR 416.920(b) and 416.971, *et seq*.).
>
> 2. The claimant has the following severe combination of medically determinable impairments: bipolar, social anxiety, depression, and personality disorders, with a history of low back pain and asthma, and obesity (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments

that meets, or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light exertional work diminished by significant additional limitations as she is restricted to work that involves simple routine tasks with not more than occasional contact with fellow employees and no contact with the general public.

5. The claimant is unable to perform her past relevant work as a sales clerk and an administrative aide (20 CFR 416.965).

6. The claimant was born on September 1, 1979, and was thus 25 years old, which is defined as a younger individual age 18-44, on the date the application was filed, May 31, 2004, and she is currently only 27 years old (20 CFR 416.963).

7. The claimant has a 10th grade, or limited, education, but is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 4, 2004, the date her application was protectively filed (20 CFR 416.920(g)).

(R. 18-32.)

Following the ALJ's second decision, plaintiff filed a Request for Review which was denied by the Appeals Council on February 27, 2007. (R. 5-7, 11.) Therefore, the ALJ's decision became the final decision of the Commissioner. Plaintiff commenced this action seeking

judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.     STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision. Jesurum v. Sec'y of United States Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence. Jesurum, 48 F.3d at 117. This court may not weigh evidence or substitute its conclusions for those of the fact-finder. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993)). As the Third Circuit stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§

423(d)(2)(A); 1382c(a)(3)(B).

Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment. 42 U.S.C. § 423(d)(5). A claimant satisfies this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). Once this standard is met, the burden of proof shifts to the Commissioner to show that given the claimant's age, education, and work experience the claimant has the ability to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f).

The Commissioner decided this matter by utilizing the five step sequential evaluation process established by the Department of Health and Human Services to determine whether a person is "disabled." This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. 20 C.F.R. § 416.920.

## III. BACKGROUND

### A. Testimony of Plaintiff, May 26, 2005

Plaintiff lived with her disabled father, her fiancee, and her two children. (R. 366.) She was sixty-six inches tall and weighed 300 pounds.[3] (R. 370.) She dropped out of school in tenth grade because there were "just too many people." (R. 377.) She tried to go back

[3] When asked if that was a normal weight for her, plaintiff replied: "That's a little too high for me." (R. 370.) Accordingly, she was trying to diet and walked around her neighborhood for exercise. (R. 370-71.)

to school after one year, but she became pregnant and had to drop out again.[4] (R. 378.) Plaintiff related that in 1999 she worked as a sales associate at Mother's Work, a clothing store. At that job, she performed various tasks which included organizing and shipping merchandise, waiting on customers and cleaning the store.[5] (R. 367.) She also worked as a sales associate at Lord & Taylor Department Store. (R. 368.) She last worked in 2003 performing clerical tasks for a hospital.[6] Id.

At the time of the first hearing, plaintiff attended group therapy weekly and saw her psychiatrist bimonthly. (R. 369.) She was prescribed Lexapro and Risperdal. Id. These medications helped with her mood swings and sleep problems. Id. She also took Albuterol to treat her asthma symptoms and muscle relaxers and Motrin to treat her back pain. (R. 369-70.) With respect to her physical capabilities, plaintiff estimated that she could lift between ten and fifteen pounds. (R. 371.) She had difficulty walking, due to asthma, "especially going up and down stairs." Id. She opined that she could stand approximately twenty to twenty-five minutes before she experienced pain in her lower back. (R. 371-72.) She was able to sit for approximately seventy-five minutes. If she sat for a longer period, her back would begin to "hurt." Id.

Plaintiff had difficulty concentrating as well as problems with her memory. (R.

---

[4] She tried to get her Graduate Equivalency Degree ("GED"), but the day she was scheduled to take her test, she "ended up giving birth to [her] daughter." (R. 378.) She attempted to take the test on another occasion, but she was unable to locate the test center. Id. Plaintiff was working with her case manager in an attempt to earn her GED. (R. 379.)

[5] She left that job after two or three months due to confrontations with her manager. (R. 380.)

[6] Plaintiff left this position because she "ended up seeing the person who had raped me when I was 15." (R. 369.)

372-73.) She was uncomfortable being around "the majority of people." (R. 373.) On a typical day, plaintiff spent most of her time in her room. (R. 373-74.) Occasionally, she cooked for her children. She did not socialize with her father unless he came to her room since she felt uncomfortable being around other people. Id. She did the laundry, shopped for groceries at a nearby market, and watched certain television programs. (R. 374-76.) She was attempting to find a way to deal with her social anxiety, but found that it was extremely difficult since this was a life-long problem. (R. 379.)

B. Testimony of VE Steve Gummerman, May 26, 2005

The VE characterized plaintiff's prior jobs as light and semi-skilled. (R. 381-82.) The ALJ posed the following hypothetical to the VE:

> Dr. Gummerman, you have a hypothetical individual who was limited to light exertional level work, who would have Ms. Liggett's age of 25, tenth grade education and the past work experience that you just described. In addition, this hypothetical individual would be limited to full routine tasks, with not more than occasional contact with supervisors and other employees, and no contact with the general public. Would this hypothetical individual, in your opinion, be expected to be able to perform either of the two occupations that Ms. Liggett performed - - sales clerk and administrative aide?

(R. 382.) The VE opined that the hypothetical individual would be unable to perform those jobs, but would be able to perform the jobs of laundry sorter, packer and inspector, jobs which existed in substantial numbers in the regional and national economy. (R. 382-83.) The VE opined that if the hypothetical individual were limited to sedentary work, she could work as an inspector or packer. (R. 383.)

The ALJ then asked the VE the following question: "If you assume that all of the claimant's testimony is fully credible, would there be any occupations that would be possible in

your opinion?" Id. The VE related that there would not be any occupations due to a combination of factors, including: "limitations, the physical aspects, the need to be inside and in isolation for the majority of each day, difficulty with dealing with people." Id. In response to questioning by plaintiff's counsel, the VE explained that all of the jobs he identified required occasional contact with supervisors and other workers. (R. 384-85.) Plaintiff's counsel then enumerated areas in which a non-examining reviewer found that plaintiff was moderately limited:

> Dr. Gummerman, I'm going to start with the items that this reviewer - - this was the non-examining reviewer, indicated would be moderately limited. That would be the ability to remember and understand detailed instructions, the ability to carry out the detailed instructions, the ability to maintain attention and concentration for extended periods, ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, the ability to work in coordination with or proximity to others without being distracted by them, the ability to complete a normal workday and work week with [sic] interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with coworkers or peers without distracting them or exhibiting behavior extremes, the ability to respond appropriately to changes in the work setting, the ability to travel in unfamiliar places or use public transportation, and the ability to set realistic goals or to make plans independently of others.

(R. 386.) Plaintiff's counsel asked the VE if the hypothetical individual with the aforementioned limitations would be capable of sustaining work activity eight hours per day, five days per week. The VE opined that the limitations set forth would prevent an individual "from getting through a workday, with any degree of success." (R. 387.)

C. Testimony of Plaintiff, May 10, 2007

At the time of the second administrative hearing, plaintiff lived with her "current boyfriend" and her two children, ages six and eight. (R. 393.) When asked why she had stopped

attending therapy, plaintiff replied:

> For one, current situation. In the past year, I moved three different times, and currently I have to actually move again; as well as the fact that I have two mental children right now.

(R. 394.) Plaintiff resumed therapy at a different treatment center called "The Wedge" prior to the second hearing. (R. 395.) At that facility, she was diagnosed with post-traumatic stress disorder, dysplasia disorder, and social anxiety. (R. 395-96.) She participated in therapy at The Wedge for approximately one month but physicians had not prescribed her medication at the time of the second hearing. (R. 397-98.) Plaintiff testified that she experienced a lot of stress during the year preceding the hearing.[7] Although she found it difficult to shop for groceries and take transportation, she did perform these tasks. (R. 396-97.)

## IV. DISCUSSION

In his second decision, the ALJ found that the evidence of record supported a finding that plaintiff had impairments that were severe within the meaning of the regulations, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (R. 12-32.) Ultimately the ALJ concluded that plaintiff, although unable to perform her past relevant work, retained the residual functional capacity[8] ("RFC") to perform unskilled, light work that involved simple, routine tasks, no more than occasional contact with coworkers, and no contact with the general public. Id.

---

[7] Plaintiff explained: "I went back under depression and everything. I've also had two episodes whether either I'm throwing things or uncontrollably crying and everything. So I really had to go back for treatment. I had to take care of myself." (R. 397.)

[8] Residual functional capacity is what an individual is able to do despite the limitations caused by his or her impairment. 20 C.F.R. § 416.945(a).

Plaintiff contends that substantial evidence does not support the ALJ's decision that plaintiff is not disabled. The gravamen of plaintiff's complaint is that the ALJ improperly analyzed the evaluation of John D. Chiampi, Ph.D., a state agency psychologist.[9] (R. 190-93; Pl.'s Br. at 11-12.) Plaintiff is challenging the explanation provided by the ALJ concerning the difference between the Part I Summary Conclusions and the Part III Functional Capacity Assessment of the mental residual functional capacity assessment form completed by Dr. Chiampi.[10] Id.

---

[9] Plaintiff also complains that the ALJ had a duty to explain his view of Dr. Chiampi's assessment prior to the second hearing and to grant her request to utilize the services of a consultative examiner due to the nonadversarial nature of the Social Security proceedings and the ALJ's "duty to investigate the facts and develop arguments both for and against granting benefits." (Pl.'s Br. at 11, n. 15.) This court notes in his second decision, the ALJ followed the instruction of the Appeals Council and sufficiently explained his reasons for affording little weight to the Summary Conclusions of Dr. Chiampi in Part I of his assessment. Furthermore, the ALJ has "broad discretion in determining whether to consult with a medical expert." Hardee v. Barnhart, 188 Fed. Appx. 127, 129 (3d Cir. 2006) (not precedential). The ALJ in this case analyzed the medical evidence, including reports and treatment notes from numerous medical providers. This court finds that this evidence was adequate and supported the decision of the ALJ. Moreover, in his second decision, the ALJ explained his reasons for denying plaintiff's request for a consultative psychological evaluation. (R. 29-30.) The ALJ opined, inter alia, that the existing mental health source evidence of record, as well as the longitudinal treatment record from The Consortium, including notes which were submitted at the remand hearing level, "more than adequately describes the claimant's mental impairments for purposes of this decision." (R. 28-30.) The ALJ followed the dictates of the order of the Appeals Council and evaluated updated medical evidence from The Consortium and The Wedge. (R. 27-28.) Accordingly, this court finds no merit in plaintiff's argument.

[10] This is of particular import since, as stated above, the Appeals Council remanded the case for an explanation of the weight afforded to Dr. Chiampi's assessment and the ALJ's ultimate RFC findings. (R. 75-76.) In his first decision, the ALJ wrote that plaintiff's mental impairments were more limiting than those assessed by the state agency psychologists. (R. 55.) The statement appeared to be inconsistent with the ALJ's ultimate decision to reject the VE's testimony in response to a hypothetical questions based on the opinion of Dr. Chiampi, the state agency psychologist, since during the first hearing, the VE testified that there would be no jobs in the national economy that an individual could perform if she had "moderate" limitations as set forth in Part I of the assessment of Dr. Chiampi. (R. 75, 386-87.) In light of this finding, the

In the Summary Conclusions under Part I, Dr. Chiampi found that plaintiff was moderately[11] limited in a range of mental activities set forth above. In Part III of the assessment, Dr. Chiampi found, inter alia, that plaintiff was able to carry out simple and basic tasks and follow basic schedules. (R. 190-93.) In his second decision, the ALJ explained that the checklist worksheet which indicated that plaintiff had moderate limitations was not Dr. Chiampi's assessment of plaintiff's RFC, but was his "summary of conclusions" derived from the evidence in the file as specified in the heading for Part I of the mental RFC capacity form. (R. 26.) The ALJ further explained:

> Dr. Chiampi's actual mental residual functional capacity assessment, in Part III of the Mental Residual Functional Capacity Form (Ex. B6F3), was that her bipolar disorder was sufficiently maintained on medication to the extent that she could clean, manage self-care, and use public transportation; she could carry out simple tasks and follow basic schedules; her social functioning was limited; and she could carry out basic work tasks. Although the undersigned does not accept the "summary conclusions" in Part I as the assessment of the claimant's mental residual functional capacity here, as in prior hearing decision, nonetheless the undersigned again finds that Dr. Chiampi's mental "functional capacity assessment" in Part III, as set forth above, is consistent with the capacities and limitations assess in prior hearing decision, and here.

Id.

Plaintiff appears to argue that the ALJ was required to include all findings from Part I of the Summary Conclusions in his residual functional capacity assessment. (Pl.'s Br. at

---

Appeals Council instructed the ALJ to again determine plaintiff's mental RFC and to provide a rationale for the determination based upon the medical evidence of record. (R. 75-76.)

[11] The Programs Operations Manual, ("POMS"), is the primary source of information used by Social Security employees to process claims for Social Security benefits. See SSA's Program Operations Manual System, http://socialsecurity.gov/regulations. According to POMS Section DI 24510.064 regarding the Completion of Section I of SSA-4734-F4-SUP, the box labeled "moderately limited" should be checked when the "evidence supports the conclusion that the individual's capacity to perform the activity is impaired. The degree and extent of the capacity or limitation must be described in narrative format in Section III."

10-12.) As explained in the POMS, and as defendant correctly notes in the brief in support of the summary judgment motion, Part I of the form completed by Dr. Chiampi is "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of the documentation and **does not constitute the RFC assessment**." POMS Sections DI 24510.060, .061, .063, and .064 (Emphasis in original); Def.'s Br. at 11-13. Therefore, the ALJ was not required to include the findings in Part I of the summary conclusions of Dr. Chiampi in the ALJ's ultimate RFC assessment, and properly relied upon the statements in Part III that plaintiff was able to carry out simple and basic tasks and follow basic schedules, to determine what limitations were appropriately included in plaintiff's mental RFC.[12] Thus, the ALJ properly did not include Dr. Chiampi's summary conclusions in the hypothetical the ALJ posed to the VE, and the ALJ likewise properly rejected the VE's response to the hypothetical question posed by plaintiff's counsel which included the "moderate" limitations referenced in Dr. Chiampi's Part I Summary Conclusions. (R. 382, 386.)

---

12 Agency professionals are advised that:

> NOTE: The purpose of section I ("Summary Conclusions") on the SSA-4734-F-SUP is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate and independent basis. It is the narrative written by the psychiatrist or psychologist in section III ("Functional Capacity Assessment") of form SSA-4734-F4-SUP that adjudicators are to use as the assessment of RFC. Adjudicators must take the RFC assessment in section III and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work. This must be done carefully using the adjudicator's informed professional judgment.

POMS Section DI 25020.010.

In his second decision, the ALJ further explained that he also relied upon other evidence of record to support his decision to afford little weight to the summary conclusions of Dr. Chiampi. The ALJ related that treatment notes from the IMX Maximizing Participation Project included an evaluation from Richard Ganley, M.D., which indicated that plaintiff's primary psychological work barriers were her lack of motivation and her need to take care of her two young children.[13] (R. 26, 239.) In addition, the ALJ noted that treatment records from the Consortium indicated that plaintiff was only "minimally compliant" with treatment during a substantial period of time, and eventually stopped treatment at that facility.[14] (R. 26-29.) The

---

[13] Plaintiff maintains that the ALJ improperly rejected Dr. Ganley's opinion that plaintiff could work only twenty hours per week. (Pl.'s Br. at 15-16.) However, as noted in his opinion, the ALJ relied on some portions of Dr. Ganley's opinion and afforded little weight to other portions of the opinion. The ALJ afforded substantial weight to Dr. Ganley's findings that plaintiff's primary psychological barriers were her lack of motivation and her need to care for her two small children. (R. 26-30, 234-40.) Dr. Ganley noted that plaintiff "showed a very low level of motivation, and no signs of wanting to become motivated, seemingly content to blame others for her problems. This is a major obstacle and also likely accounts for much of her low energy and as noted, low motivation. It also likely contributes to the fact that she has never held a job for greater than five months, and her statements that she does not like people." (R. 238.) The ALJ afforded little weight to other parts of Dr. Ganley's evaluation, including his opinion that plaintiff could work only twenty hours per week, because, inter alia, updated evidence from The Consortium indicated that plaintiff was "minimally compliant" with treatment during much of her treatment, and totally "non-compliant with treatment" throughout other times. The ALJ indicated that plaintiff had thirteen "unexcused no shows" for therapy sessions reported between April 2005 through August 2005, and only one psychiatric check in December 2005. (R. 27-28.) Plaintiff stopped treatment at the Consortium in December 2005, and was formally terminated in March 2006 as "AWOL." (R. 28.) In addition, the ALJ noted that plaintiff presented to The Wedge in April 2007, "some sixteen months after her last visit to the Consortium." Id. Plaintiff also testified that she had not been prescribed medication by physicians at The Wedge. (R. 26-30, 397-98.) Substantial evidence in the record supports the ALJ's decision to afford some weight to certain portions of the opinion of Dr. Ganley, while according little weight to other portions of the opinion.

[14] Plaintiff maintained at the second hearing that her non-compliance with treatment was attributable to frequent moving. (R. 394.) However, in his decision, the ALJ did not afford this explanation weight since plaintiff offered no evidence to support this assertion. With regard

ALJ also cited to treatment records from The Wedge that revealed that plaintiff sought mental health treatment after a treatment gap of sixteen months and was assigned a Global Assessment of Functioning ("GAF")[15] score of fifty-five, which indicated only moderate symptoms.[16]  Id.

  The ALJ also gave considerable weight to the opinion of Charles Johnson, Psy.D., a consultative examiner to corroborate his assessment of plaintiff's mental RFC.  The ALJ found that the opinion was well supported by medically acceptable clinical and laboratory diagnostic techniques, was based upon objective mental status findings in Dr. Johnson's report and was not inconsistent with other evidence in the record.  (R. 28-29.)  See 20 C.F.R. § 416.927(d)(3) (providing for greater weight to be afforded a medical opinion when the opinion is supported by relevant evidence including medical signs and laboratory findings).[17]  This court finds that

---

to plaintiff's non-compliance and sporadic treatment, the ALJ noted that the "more reasonable conclusion to be reached is that the claimant's mental symptoms and limitations were not severe enough, at any time since she filed her application in April 2004, to require the continuous counseling sessions and/or medications prescribed at the Consortium.  It is also reasonable to conclude that the primary reason for the claimant's visit to The Wedge mental health clinic in April 2007, about two weeks prior to her scheduled remand hearing, was to obtain some current medical documentation to support her claim at the hearing."  (R. 29.)

[15] The Global Assessment of Functioning Scale is a tool used to report a clinician's judgment of an individual's overall level of functioning and can be used to track the clinical progress of an individual in global terms, using a single measure.  Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32.  A GAF of fifty-five indicates moderate symptoms.

[16] According to the ALJ, Dr. Chiampi did not have the benefit of these records at the time Dr. Chiampi completed his mental residual functional assessment.  (R. 26.)

[17] Plaintiff questions the ALJ's reliance on this opinion and avers that "although the ALJ stated that Dr. Johnson's opinion was consistent with the ALJ's mental RFC determination, Dr. Johnson found no limitations for acting appropriately with the public (R. 174); whereas, the ALJ's mental RFC determination specified that Plaintiff had no ability to deal with the public." (Pl.'s Br. at 14.)  The ALJ opined that Dr. Johnson's opinion was "generally consistent" with other evidence of record.  Although the ALJ disregarded some elements of the checklist form, it

substantial evidence in the record supports the ALJ's decision that plaintiff was not disabled.

## V. CONCLUSION

The ALJ in this case set forth his reasons for finding that plaintiff was not disabled. (R. 12-32.) Although plaintiff points to evidence in the record to support her disability claim,[18] under the substantial evidence test, "the question is not whether we would arrive at the same decision; it is whether there is substantial evidence supporting the Commissioner's Decision." Donatelli v. Barnhart, 127 Fed. Appx. 626, 630 (3d Cir. 2005) (not precedential) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1990)). For all the above reasons, this court finds that substantial evidence supports the ALJ's finding that plaintiff was not disabled under the Act. Accordingly, the court makes the following:

**R E C O M M E N D A T I O N**

AND NOW, this 23rd day of December, 2008, upon consideration of plaintiff's

---

was totally "within his purview to reject certain evidence" as long as his explanation "provides a satisfactory factual record for appellate review." Yesnick v. Barnhart, 245 Fed. Appx. 176, 182 (3d Cir. 2007) (not precedential). It is obvious from the decision of the ALJ that he gave some credence to plaintiff's testimony that she was adversely affected by crowds due to her social anxiety disorder. (R. 24, 377.) Thus, the ALJ found that "claimant's assertions concerning the severity of her impairments, and their impact on her ability to work, are only credible to the extent that they support a finding of being able to perform work at the light exertional level with simple routine tasks, occasional contact with fellow-workers, and no contact with the general public." (R. 24.) Accordingly, this court finds that this argument lacks merit.

[18] See, i.e., Pl.'s Br. at 11-17.

motion for summary judgment, defendant's motion for summary judgment, and plaintiff's response thereto, it is respectfully recommended that plaintiff's motion for summary judgment be DENIED, defendant's motion for summary judgment be GRANTED, and judgment be entered in favor of defendant.

BY THE COURT:


/s/ Thoms J. Rueter
THOMAS J. RUETER
Chief United States Magistrate Judge